Steven S. Vosbikian
VOSBIKIAN & VOSBIKIAN
Attorney for Plaintiff
1060 Kings Highway North
Suite 101
Cherry Hill, NJ 08034
T: (856) 755-1400; F (856) 755-1475
ssvosbikian@voslaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Maritza MORALEZ<br>Juan Carlos VALLECILLO LOPEZ<br><br>*Petitioners,*<br><br>v.<br><br>ANTHONY BLINKEN in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF STATE<br><br>MERRICK GARLAND in his official capacity as ATTORNEY GENERAL OF THE UNITED STATES<br><br>IAN G. BROWNLEE in his official capacity as ACTING ASSISTANT SECRETARY, BUREAU OF CONSULAR AFFAIRS<br><br>TIM STATER in his official capacity as DEPUTY CHIEF OF MISSION, UNITED STATES EMBASSY, MANAGUA, NICARAGUA<br><br>JOHN DOE in his official capacity as CONSULAR OFFICE, UNITED STATES EMBASSY, MANAGUA, NICARAGUA<br><br>GURBIR S. GREWAL in his official capacity as UNITED STATES ATTORNEY<br><br>*Respondents.* | Civil Action No.: 1:21-cv-5726<br><br>**COMPLAINT IN THE NATURE OF DECLARATORY JUDGMENT** |

## **INTRODUCTION**

**COME NOW** Maritza MORALEZ and Juan Carlos VALLECILLO LOPEZ (hereinafter collectively as "Petitioners"), by and through the undersigned attorney in the above cause and state as follows:

1. This action is brought as a result of Respondents' denial of Juan Carlos Vallecillo Lopez's immigrant visa. This complaint falls within the two exceptions to the doctrine of nonreviewability.

2. This Court has jurisdiction to review the U.S. Embassy's decision denying Juan Carlos Vallecillo Lopez's immigrant visa because the decision was not bona fide or facially legitimate. In finding Juan Carlos Vallecillo Lopez inadmissible, the Embassy cites a section of the INA that does not exist. If we are to assume the U.S. Embassy alleges Juan Carlos Vallecillo Lopez is inadmissible because the consular officer has reason to believe he is engaged the illegal exportation of goods, technology, or sensitive information (a ground of inadmissibility that cannot be waived), it leaves the Petitioners dumbfounded, as such allegations, according to the parties, are unsupported. This Court has jurisdiction to investigate the evidence to ensure the decision is reasonably supported by the facts.

3. This Court also has jurisdiction because the denial Juan Carlos Vallecillo Lopez's violates Maritza Moralez's inalienable, constitutional rights granted to her under the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution.

4. Respondents are in violation of the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.

5. This Court shall direct to U.S. Embassy in Nicaragua to review its decision and/or grant issuance of Juan Carlos Vallecillo Lopez's immigrant visa.

## PARTIES

6. Petitioner Maritza Moralez is a natural born citizen of the United States, residing at 2802 Howell Street, Apartment D, Camden, New Jersey, 08105. Petitioner Juan Carlos Vallecillo Lopez is a foreign nation of Nicaragua and the immediate relative spouse of Maritza Moralez.

7. Respondent Anthony Blinken is the Secretary of the United States Department of State (hereinafter "DOS") and is sued in his official capacity only. Secretary Blinken is the head of the Department of State and is responsible for setting and overseeing the implementation of policies and procedures employed by the DOS and subdivisions, including the Bureau of Consular Affairs and U.S. Consulate in Managua, Nicaragua.

8. Respondent Merrick Garland is the Attorney General of the United States and is sued in his official capacity only. Attorney General Garland is an official generally charged with supervisory authority over all operations of the Department of Justice (hereinafter "DOJ") under 28 C.F.R. § 0.5.

9. Respondent Ian G. Brownlee is the Acting Assistant Secretary of State for Consular Affairs and is sued in his official capacity only. Acting Assistant Secretary

Brownlee is responsible for setting and overseeing the implementation of policies and procedures employed by the Bureau of Consular Affairs.

10. Respondent Tim Stater is the Deputy Chief of Mission of the United States Embassy in Managua, Nicaragua and is sued in his official capacity only. He is the principal officer in charge of the Embassy.

11. Respondent John Doe is a Consular Officer at the United States Embassy in Managua, Nicaragua and is sued in his official capacity only.

12. Defendant Gurbir S. Grewel is the United States Attorney for the State of New Jersey. Defendant Grewel is sued in his official capacity only.

## JURISDICTION AND VENUE

13. This Court has jurisdiction to hear this complaint and the claims stated herein by pursuant to 28 U.S.C. §§ 1331, § 1361 and §2201(a) (Declaratory Judgment). This Court has additional jurisdiction by virtue of the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*.

14. Petitioner Moralez resides within the jurisdiction of this Court and thus, venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

A. BACKGROUND INFORMATION

15. On April 13, 1974, Petitioner Juan Carlos Vallecillo Lopez (herein after referred to as "Lopez") was born in Nicaragua. On October 11, 1985 Lopez entered the United States without inspection. Lopez was eleven (11) years old at the time.

Lopez was not apprehended by U.S. Customs and Border Patrol at the time of his entry.

16. After entering the United States, Lopez reunited with his biological father, Freddy E. Vallecillo. Lopez soon came to discover his father married another woman and was responsible for four (4) other children.

17. Lopez was neglected by his father, which led to a brief period where he was homeless and living on the street. Lopez's schoolmate, Javier Sandoval, insisted that Lopez meet his family. By pure coincidence, Lopez learned that Sandoval's mother was once close friends with Lopez's biological mother. The Sandolval family "adopted" Lopez, who lived with the Sandolvals from 1987 until 2001.

18. Lopez eventually met and fell in love with Maritza Moralez (hereinafter referred to as "Moralez"). Lopez and Moralez have five (5) biological children together:

    a. Lieany Ivelice VALLECILLO    (DOB: 01/21/2002)

    b. Jasmira Lee VALLECILLO    (DOB: 09/22/2004)

    c. Juan Carlos VALLECILLO, Jr.    (DOB: 04/13/2008)

    d. Adamaris Marie VALLECILLO    (DOB: 10/11/2012)

    e. Giovanni VALLECILLO    (DOB: 05/20/2020)

19. Lopez and Maritza have been together since May of 2001. They started living together after the birth of their second child in 2004. On September 29, 2014, the couple married in a civil ceremony in Camden, New Jersey.

20. Lopez is the primary financial provider for his family.

B. PROCEDURAL HISTORY

21. On March 05, 2015, Moralez filed an I-130, Petition for Alien Relative to classify Lopez as an immediate relative spouse. On July 30, 2015, Moralez's petition was approved.[1]

22. Although Lopez is the beneficiary of an approved immediate relative petition, he is statutorily ineligible to obtain lawful permanent residence through adjustment of status. Due to his manner of entry, Lopez is eligible to obtain an immigrant visa at the US Embassy in Nicaragua.

23. On February 11, 2020, Lopez departed the United States to attend his interview at the U.S. Embassy in Nicaragua and obtain an immigrant visa. Lopez's departure triggered the ten-year bar for "unlawful presence," however, a waiver is authorized under the INA if a qualifying United States citizen or lawful permanent resident spouse can demonstrate that refusal of admission to an immigrant would impose extreme hardship upon the qualifying relative. INA §§ 212(a)(9)(B)(i)(II), 212(a)(9)(B)(i)(II)(v).[2]

24. In anticipation of this arising ground if inadmissibility, Lopez's attorney filed an I-601, Application for Grounds of Inadmissibility. This waiver was approved.

25. Unfortunately, Lopez was not issued an immigrant visa after his first interview. Instead, the consular officer requested that Lopez return and submit his

---

[1] Lopez's father was negligent with respect to his son's immigration status and failed to file any petition and/or relief on behalf of his son.

[2] Although Lopez has been previously arrested, he received probation. Lopez's predecessor determined Lopez was inadmissible only due to his unlawful presence.

"migratory profile." This is a Nicaraguan document which denotes an individual's travel in and out of the country.

26. Lopez obtained his migratory profile, however, he was surprised to learn that his profile contained various trips in and out of Nicaragua. These alleged trips occurred while Lopez was living and working the United States. Lopez adamantly maintains that he has never left the United States since his initial entry.

27. In good faith, Lopez provided his migratory profile to the U.S. Embassy despite the derogatory information it contained. Lopez maintains he was not concerned because he knew had never left the United States since his initial entry. When questioned by the consular officer, Lopez could not explain why his migratory profile included such trips; he instead attested that he had never left the United States since his initial entry. It shall be noted that the petitioner's name is extremely common in Nicaragua.

28. Lopez's position that he never left the United States is evidenced by his physical presence in the United States at the time he allegedly was making multiple trips in and out of Nicaragua. At the time of such trips, Lopez would not have had the financial means to travel. Lopez was also filing income tax returns around this time period.

29. On March 05, 2021, after waiting almost one (1) year, the U.S. Embassy again requested Lopez's appearance.

30. On March 05, 2021, a consular officer handed Lopez a sheet of paper alleging Lopez was inadmissible under INA § 212(a)(A)(3)(A)(II). While this appears to be a

mic-citation, we speculate that the ground the consular intended to cite was INA § 212(a)(3)(A)(II), which renders an alien inadmissible who engaged in any activity involving the illegal export of goods, technology, or sensitive information.

31. It shall be noted that Lopez was never questioned about whether he engaged in any activity involving the illegal export of goods, technology, or sensitive information.

### C. LEGAL ISSUES WHICH ARISE AS A RESULT OF THE CONSULAR OFFICER'S DECISION DENYING LOPEZ'S IMMIGRANT VISA

32. It is not possible to cite INA § 212(a)(A)(3)(A)(II) because this subsection of the INA does not exist. The Petitioners are left to speculate as to why Lopez is inadmissible. It shall be noted that the consular's decision did indicate Lopez was inadmissible due to his migratory profile.

33. The most plausible citation is INA § 212(a)(3)(A)(II), which finds inadmissible "any alien who a consular officer or the Attorney General knows, or has reasonable grounds to believe, seeks to enter the United States to engage solely, principally, or incidentally in any activity to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information." INA § 212(a)(3)(A)(II). There is no waiver authorized under this ground of inadmissibility. There is no connection between this ground of inadmissibility and Lopez's migratory profile.

34. If the U.S. Embassy is alleging Lopez is inadmissible pursuant to INA § 212(a)(3)(A)(II), it raises more questions. Lopez and his spouse are left dumbfounded as to how the U.S. Embassy has arrived at this conclusion. Lopez and his spouse are

now left clueless and helpless; they are separated and have very little hope of reuniting. This has caused severe psychological distress to Lopez, Moralez, and their five (5) children.

35. Petitioner Moralez, a citizen of the United States, has inalienable rights afforded to her under the United States constitution. Moralez has been deprived her right to life, liberty, and the pursuit of happiness without proper due process. U.S. CONST. amends. V, XIV. She has the right to petition her husband. U.S. CONST. amend. I. She has the right to be reunited with her spouse and live with him in the United States with their five (5) children. U.S. CONST. amend. IX.

### D. LEGAL ARGUMENT

36. Decisions of a consular officer are generally not reviewable, however, there are two exceptions to the doctrine of nonreviewability. *Matushkina*, 877 F.3d at 294; *see Kleindienst v. Mandel*, 408 U.S. at 770. The first exception is the Court's "limited review to determine whether a visa was denied for a bona fide and facially legitimate reason." *Matushkina*, 877 F.3d at 294. The Court's limited review looks "at the face of the decision to see if the officer cited the proper ground under the statute, and ensure that no other applicable constitutional limitations are violated. Once that is done, if the undisputed record includes facts that would support that ground, our task is over." *Id*.

37. The First Circuit in *Adams v. Baker* engaged in limited review of evidence as it pertained to a denial of a visa at a U.S. consulate abroad to determine whether the evidence was sufficient to 'support a finding of reasonable belief.' *Adams v. Baker*,

909 F.2d 643 (1st Cir. 1990). The Tenth Circuit in *Marczak v. Greene* in its judicial review of an excluded alien held that under the "'facially legitimate and bona fide reason' standard, the Court must review the agency decision to ensure that it is 'at least reasonably supported by the record.'" LITIGATING IMMIGRATION CASES IN FEDERAL COURT, Robert Pauw pp. 566 (4th Edition 2017) (citing *Marczak v. Greene*, 971 F.2d 510 (10th Cir. 1992). The First Circuit's decision in *Amanullah v. Nelson* likened the "facially legitimate and bona fide reason" standard with the "abuse of discretion" standard, "implying that at least some inquiry into the factual basis for the agency decision is necessary to ensure that the decision is not mala fide in the sense of lacking at least some factual support." *Id.* (citing *Amanullah v. Nelson*, 811 F.2d 1 (1st Cir. 1987).

38.     The second exception is the Court's review of a consular's decision "where a denial of an alien's application affects a U.S. citizen's constitutional rights." *Matushkina*, 877 F.3d at 29. Case law of "multiple federal circuit courts of appeals establishes that a 'U.S. citizen raising a constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry regarding the reason for the decision.'" THE POWER OF CONGRESS AND THE EXECUTIVE TO EXCLUDE ALIENS: CONSTITUTIONAL PRINCIPLES, Ben Harrington, pp. 15 Dec. 30, 2019 (citing *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008) (noting similar holdings by "the First, Second, and D.C. Circuits")).

    E.  <u>DISCUSSION</u>

- 10 -

39. Here, this Court obtains jurisdiction to determine whether Lopez's visa was denied for a bona fide and facially legitimate reason, whether the consular officer cited a proper ground to exclude Lopez, and whether Moralez's constitutional rights have been violated. *Matushkina*, 877 F.3d at 294.

40. Here, the consular officer cited a ground of inadmissibility that does not exist. For this reason, the finding is not bona fide and is not facially legitimate. *Id*. Assuming the consular officer has "reason to believe" Lopez is inadmissible for exporting of goods, technology, or sensitive information, the Court should engage in limited review of the evidence to determine whether the consular's finding was sufficient and reasonably supported by the record. *Adams v. Baker*, 909 F.2d 643 (1st Cir. 1990); *Marczak v. Greene*, 971 F.2d 510 (10th Cir. 1992). An inquiry as to the factual basis for the U.S. Embassy's decision is necessary to ensure that the decision has not been rendered in bad faith or amounts to an abuse of discretion. *Amanullah v. Nelson*, 811 F.2d 1 (1st Cir. 1987). The U.S. Embassy's negligence in citing a ground of inadmissibility that does not exist, and without any explanation, amounts to an abuse of discretion which warrants this Court's review of Lopez's visa denial. *Amanullah v. Nelson*, 811 F.2d 1 (1st Cir. 1987).

41. This Court also obtains jurisdiction because the denial of Lopez's immigrant visa affects Moralez's constitutional rights under the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution. U.S. CONST. amends. I, V, IX, and XIV; *Matushkina*, 877 F.3d at 29. Moralez has the right under the First Amendment to petition her husband. Under the Fifth and Fourteenth Amendments,

Moralez cannot be deprived of her inalienable right to life, liberty, and the pursuit of happiness without the due process of law.  The U.S. Embassy has failed to properly cite a ground of inadmissibility or provide any explanation with respect to their determination of inadmissibility.  They have left the parties clueless and dumbfounded.  The U.S. Embassy in Nicaragua has certainly deprived Moralez of her due process rights.  *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008) (noting similar holdings by "the First, Second, and D.C. Circuits")).

42.     Lopez has been living in the United States for more than thirty years.  He is the sole provider for his family.  He has five (5) children with Moralez.  He does not have a criminal conviction.  He has demonstrated candor both to the USCIS and to the U.S. Embassy.  Taking these facts into consideration, the U.S. Embassy violated Moralez's constitutional rights in denial of her spouse's immigrant visa.

## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

43.     All prior paragraphs are re-alleged as if fully stated herein.

44.     Petitioner maintains a statutory right to join his.

45.     No other adequate remedy is available to Petitioners.

46.     Respondents have violated the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, and have unlawfully denied Lopez's immigrant visa.

## PRAYER FOR RELIEF

**WHEREFORE**, the Petitioners respectfully pray:

**A.**     Respondents be cited to appear herein and that, upon due consideration, the U.S. Embassy cite a proper ground of inadmissibility, if applicable.

**B.** Respondents be cited to appear herein and that, upon due consideration, the Court engage in limited judicial inquiry as to the factual basis with respect to the U.S. Embassy's inadmissibility determination.

**C.** In the alternative, the Court compel Respondents, and those acting under them, to perform their duty and adjudicate Petitioner's immigrant visa application immediately.

**D.** Finally, that the Court award reasonable attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 504, and such other and future relief as this Court deems proper under the circumstances.

                                        Respectfully Summitted,

                                        VOSBIKIAN & VOSBIKIAN

By: _____
                                        STEVEN S. VOSBIKIAN
                                        Attorney for Petitioners

Dated:  March 18, 2021

## **VERIFICATION**

I, Steven S. Vosbikian, being duly sworn upon oath, hereby state: I am the attorney representative for the plaintiff in this case and I verify that the information contained in the foregoing petition is true and correct to the best of my knowledge and belief.

Date: March 18, 2021

                                                                                           Respectfully Summitted,

                                                                                           VOSBIKIAN & VOSBIKIAN

By:    _____
                          STEVEN S. VOSBIKIAN
                          Attorney for Petitioners