UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARITZA MORALEZ, JUAN CARLOS VALLECILLO LOPEZ | : | |
| | : | |
| Petitioners, | : | Civil Action No. 1:21-cv-05726 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ANTHONY BLINKEN in his official Capacity as Secretary of the UNITED STATES DEPARTMENT OF STATE; MERRICK GARLAND in his official Capacity as ATTORNEY GENERAL OF THE UNITED STATES; IAN G. BROWNLEE in his official capacity as ACTING ASSISTANT SECRETARY, BUREAU OF CONSULAR AFFAIRS; TIM STATER in his official capacity as DEPUTY CHIEF OF MISSION, UNITED STATES EMBASSY, MANAGUA, NICARAGUA; JOHN DOE in his capacity as CONSULAR OFFICE, UNITED STATES EMBASSY, MANAGUA, NICARAGUA; GURBIR S. GREWAL in his official capacity As UNITED STATES ATTORNEY, | : | |
| Respondents. | : | |

Plaintiffs Maritza Moralez ("Moralez") and her husband Juan Carlos Vallecillo Lopez ("Lopez") (collectively "Plaintiffs") ask the Court to review a consular official's decision to deny Lopez's application for an immigrant visa. However, as Respondents Merrick Garland, Anthony Blinken, Ian G. Brownlee, Tim Stater, and Gurbir S. Grewal ("Defendants" or "the Government") argue in their motion to dismiss presently before the Court [Dkt. 9], the doctrine of consular nonreviewability precludes the Court from reviewing visa denials unless the denial

1

violates the constitutional rights of a United States citizen. Because Plaintiffs have not pled a constitutional injury, the Court will grant Defendants' motion.

## I. Background

Plaintiffs filed this lawsuit to challenge the denial of Lopez's immigration visa application. According to their Complaint, Lopez was born in Nicaragua and entered the United States without inspection or apprehension when he was eleven years old. [Compl. ¶ 15]. In May 2001, Lopez began a relationship with Moralez, a natural-born citizen of the United States, and the couple married on September 29, 2014. [Compl. ¶ 19]. They have five children together. [Compl. ¶¶ 6, 18].

After marrying, Plaintiffs pursued an immigration visa for Lopez based on Moralez's citizenship. On March 5, 2015, Moralez filed an I-130 Petition for Alien Relative to classify Lopez as an immediate relative spouse, which was approved. [Compl. ¶ 21]. On February 11, 2020, Lopez flew from the United States to Nicaragua to attend a consular interview at the United States Embassy in Managua. [Compl. ¶ 23]. The consular officer did not grant Lopez a visa at Lopez's first interview but required Lopez to return with his "migratory profile." [Compl. ¶ 25]. A "migratory profile" is a "Nicaraguan document which denotes an individual's travel in and out of the country." [Compl. ¶ 25]. Lopez obtained his migratory profile, which showed "various trips in and out of Nicaragua." [Compl. ¶ 26]. According to Plaintiffs, the migratory profile was inaccurate because Lopez never left the United States after arriving at age eleven. [Compl. ¶¶ 26, 28]. Despite the inaccuracy, Lopez provided his migratory profile to the United States Embassy. [Compl. ¶ 27].

On March 5, 2021, Lopez returned to the United States Embassy in Nicaragua, where a consular officer provided Lopez with a letter rejecting his application (the "Rejection Letter").

[Compl. ¶ 30]. The Rejection Letter cited Section 212(a)(A)(3)(A)(II) of the Immigration and Nationality Act ("INA") as the statutory basis for the rejection. [Compl. ¶ 30]. This subsection of the INA does not exist. Plaintiffs assume that the consular official intended to cite INA § 212(a)(3)(A)(ii), 8 U.S.C. § 1182(a)(3)(A)(ii), which states that "[a]ny alien who a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in … any other unlawful activity … is inadmissible."[1] [Compl. ¶ 30]. Plaintiffs are "dumbfounded" by this rejection, not only because Lopez never left the United States before his consular visit, but also because he "was never questioned about" any illegal activity. [Compl. ¶¶ 2, 31]. Plaintiffs further allege that Lopez's rejection letter "did not indicate Lopez was inadmissible due to his migratory profile" [Compl. ¶ 32], and that "[t]here is no connection between this ground of inadmissibility and Lopez's migratory profile." [Compl. ¶ 33]. As a result of this denial, Lopez cannot return to the United States. [Compl. ¶ 34].

Plaintiffs filed their Complaint alleging that the denial of Lopez's immigrant visa violated Moralez's constitutional rights under the First, Fifth, Ninth, and Fourteenth Amendments, and the Administrative Procedures Act, 5 U.S.C. § 701 et seq. ("APA"), and that Lopez's visa was denied without a "bona fide and facially legitimate reason." [Compl. ¶¶ 39, 41, 46]. After Plaintiffs filed their Complaint, the Government sent a revised refusal letter (the "Revised Letter") which cites INA § 212(a)(3)(A)(ii), 8 U.S.C. § 1182(a)(3)(A)(II) as the statutory basis for denial. [Dkt. 9-1 at 6]. The Government then moved to dismiss the Complaint under Federal

---

[1] The Complaint alleges that § 212(a)(3)(A)(ii) "renders an alien inadmissible who engaged in any activity involving the illegal export of goods, technology, or sensitive information." [Compl. ¶ 30]. However, § 212(a)(3)(A)**(i)** applies to aliens believed to be engaged in this conduct.

Rule of Civil Procedure 12(b)(6) for failure to state a claim. [Dkt. 9]. After Plaintiffs failed to file a timely response, the Court issued an order to show cause why the Court should not treat the Government's motion as unopposed and dismiss Plaintiffs' case. [Dkt. 11]. Plaintiffs then filed an opposition asking the Court to order the Government "to provide Plaintiffs a substantive explanation as to their amended determination of inadmissibility under INA § 212(a)(3)(A)(ii), which was cited without explanation." [Dkt. 12 at 1].

## II. Jurisdiction

The Court has federal question jurisdiction over this case under 28 U.S.C. § 1331.

## III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester Cnty. Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.*

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. Analysis

"It is well-settled that the decision of a consular [official] to grant or deny a visa is not subject to judicial review." *Khachatryan v. United States*, No. CV 17-07503-BRM-TJB, 2018 WL 4629622, at *4 (D.N.J. Sept. 27, 2018) (collecting cases). "This principle is known as the Doctrine of Consular Nonreviewability." *Id.* (citing *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009)). *See also Onuchukwu v. Clinton*, 408 F. App'x 558, 560 (3d Cir. 2010) ("The widely applied doctrine of consular nonreviewability generally places a consular official's decision to issue or withhold a visa outside the scope of judicial review." (citation omitted)). Under this doctrine, courts "cannot review a consular officer's decision even upon allegations that the consular officer acted on erroneous information … that the INA did not authorize the officer's decisions … or that the State Department failed to follow its own regulations." *Khachatryan*, 2018 WL 4629622, at *5 (citations and quotations omitted). "[E]ven an erroneous decision escapes review." *Onuchukwu*, 408 F. App'x at 560 (citing *Loza–Bedoya v. Immigration & Naturalization Serv.*, 410 F.2d 343, 347 (9th Cir. 1969)). "[A]s long as the State Department considers the merits of an application for an immigrant visa, this Court may not alter or even review the Department's decision." *Onuchukwu v. Clinton*, No. CIV.A. 10-1490 JLL, 2010 WL 3614217, at *2 (D.N.J. Sept. 7, 2010), *aff'd*, 408 F. App'x 558 (3d Cir.

2010) (citing *Elhabash v. Untied States Dept. of State*, No. 09–5847, 2010 WL 1742116, at *2 (D.N.J. April 27, 2010)).

In *Kleindienst v. Mandel*, the Supreme Court recognized a narrow exception to the doctrine of consular nonreviewability where a visa denial violates the constitutional rights of a United States citizen. 408 U.S. 753, 765–70 (1972). "However, even if constitutional rights [are] implicated, a court's review is limited." *Khachatryan*, 2018 WL 4629622, at *6 (citing *Mandel*, 498 U.S. at 770). The *Mandel* Court held that "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" a citizen's constitutional rights. *Mandel*, 498 U.S. at 770. Thus, so long a consular officer provides a "legitimate and bona fide reason" for a visa denial that violates a citizen's constitutional rights, courts cannot review that decision any further. *Id.*; *see also Ruiz-Herrera v. Holder*, No. 12-0194, 2013 WL 1136849, at *5 (N.D. Ga. Mar. 15, 2013) ("A consulate's decision to deny an immigrant visa will be upheld under *Mandel* as long as the decision is based on a 'facially legitimate and bona fide' reason." (citations omitted)). To establish a bona fide and facially legitimate reason for denying a visa, "the Government need provide only a statutory citation to explain a visa denial."[2] *Trump v. Hawaii*, 138 S. Ct. 2392, 2419, 201 L. Ed. 2d 775 (2018) (citations omitted).

---

[2] The Court rejects Plaintiffs' argument that this rule applies only where the Government denies a visa application based on "terrorism or national security" concerns, and that a plaintiff is otherwise entitled to a fuller or more detailed explanation. [Dkt. 12 at 3]. *See Bano v. Pompeo*, 377 F. Supp. 3d 464, 469 (E.D. Pa. 2019) (finding that there need not "be evidence in the record of an alien's association with terroristic activities for a citation to § 1182(a)(3)(B) to be sufficient.").

### a. Whether a Second *Mandel* Exception Exists

Plaintiffs maintain that a second exception to the doctrine of consular nonreviewability exists where the consular official fails to provide a bona fide and facially legitimate reason for denial regardless of whether the denial violated a citizen's constitutional rights. [Compl. ¶ 36]. Plaintiffs cite Seventh Circuit case law to support their position. [Compl. ¶ 36]. In *Hazama v. Tillerson*,[3] the Seventh Circuit found that

> [t]he language in *Mandel* suggests at least two possible exceptions to the general norm of nonreviewability:
>
>> "We hold that when the Executive exercises [the power to admit] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."
>
> In addition, as the final allusion to the First Amendment implies, some courts have held that if a visa denial affects the constitutional rights of American citizens, then it may be reviewable.

851 F.3d 706, 708–09 (7th Cir. 2017) (quoting *Mandel*, 408 U.S. at 770). As this excerpt demonstrates, the Seventh Circuit permits courts to consider whether the Government denied a visa application for a "facially legitimate and bona fide reason" without first confirming that the denial "affect[ed] the constitutional rights of American citizens." Plaintiffs urge this Court to follow suit.

The Court declines to do so. The Third Circuit, like many others, does not recognize this second exception. *See Romero v. Att'y Gen. United States*, 972 F.3d 334, 340 (3d Cir. 2020) ("[A] court may review a visa denial in the limited circumstance where the visa denial

---

[3] *Hazama* is cited in *Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017), which Plaintiffs cite throughout their Complaint.

potentially infringes on the constitutional rights of American citizens." (citing *Mandel*, 408 U.S. at 765–70)); *accord Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) ("The Supreme Court recognized a narrow exception to this general rule in *Mandel*, allowing for limited judicial review when a U.S. citizen's own constitutional rights … are assertedly burdened by a visa denial."); *Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021) ("If a consulate's decision implicates the constitutional rights of United States citizens or lawful permanent residents, a court may review a challenge to the application."); *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008) ("Joining the First, Second, and D.C. Circuits, we hold that under *Mandel*, a U.S. citizen raising a constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry regarding the reason for the decision."). Constitutional injury is a necessary precondition for limited judicial review of a visa denial.

Even if Third Circuit precedent did not foreclose this second exception, the Court disagrees with the Seventh Circuit's reading of *Mandel*. In *Mandel*, the appellees were college professors who claimed that the Government violated their First Amendment rights when it rejected the visa application of Ernest Mandel—a Belgian "revolutionary Marxist" author—whom the professors had invited to participate in a conference in the United States. 408 U.S. at 755–57. The main issues in the case were whether and two what extent the citizen-professors' First Amendment rights permitted a court to review the consular decision to deny Mandel's application. *See Mandel*, 408 U.S. at 754 ("Does appellants' action in refusing to allow an alien scholar to enter the country to attend academic meetings violate the First Amendment rights of American scholars and students who had invited him?"); *id.* at 762 ("The case, therefore, comes down to the narrow issue whether the First Amendment confers upon the appellee professors … the ability to determine that Mandel should be permitted to enter the country or, in other words,

9

to compel the Attorney General to allow Mandel's admission."). It was only after determining that the visa denial implicated the professors' First Amendment rights that the *Mandel* Court considered the extent of judicial review that was permissible. *See id.* at 766 ("Recognition that First Amendment rights are implicated, however, is not dispositive of our inquiry here…."). And the *Mandel* Court concluded that the proper scope of review was to consider whether the consular official provided a legitimate and bona fide reason for denial. *Id.* at 770. Thus, the *Mandel* Court's decision not to "test" "facially legitimate and bona fide" reason for a visa denial "by balancing its justification against [] First Amendment interests" addressed the *extent* of judicial review that follows a constitutional injury, not *whether* a constitutional injury was required. This decision did not relieve plaintiffs of their obligation to establish a constitutional violation altogether.

In this context, the Court does not read the passage from *Mandel* cited in *Hazama* as creating a second, free-floating exception to consular nonreviewability untethered from a citizen's constitutional rights. Not requiring a threshold constitutional violation would "convert[] consular nonreviewability into consular reviewability" by making "all claims … reviewable under some standard." *Allen v. Milas*, 896 F.3d 1094, 1107 (9th Cir. 2018). Such an expansive reading of *Mandel* "flies in the face of more than a century of decisions limiting our review of consular visa decisions." *Id.* The Court therefore rejects Plaintiffs' argument that they are entitled to judicial review of Lopez's visa denial even if the denial did not deprive Moralez of her constitutional rights.

### b. Analysis of Constitutional Claims

Plaintiffs allege that Lopez's visa denial violates Moralez's constitutional rights under the First, Fifth, Ninth, and Fourteenth Amendments. [Compl. ¶ 3]. The Complaint clarifies that the

10

denial deprived Moralez of her "right to life, liberty, and the pursuit of happiness without proper due process" under the Fifth and Fourteenth Amendments; that Moralez "has the right to petition her husband" under the First Amendment; and that "[s]he has the right to be reunited with her spouse and live with him in the United States with their five (5) children" under the Ninth Amendment. [Compl. ¶ 35]. The Court disagrees.

Plaintiffs' Complaint fails to plead cognizable due process violations under the Fifth and Fourteenth Amendments. The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. However, "no process is due if one is not deprived of 'life, liberty, or property.'" *Kerry v. Din*, 576 U.S. 86, 90 (2015) (Scalia, J.) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). The same is true with respect to Fourteenth Amendment due process rights. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 138–40 (3d Cir. 2000). Thus, no process is due to Moralez unless she can first establish that Lopez's visa denial deprived her of "life, liberty, or property."

Moralez fails to do so. Courts nationwide have rejected the argument that citizens have protected constitutional interests in having their non-citizen spouses present in the United States. *See, e.g.*, *Din*, 576 U.S. at 101 (Scalia, J.) ("Because Fauzia Din was not deprived of 'life, liberty, or property' when the Government denied [her husband's] admission to the United States, there is no process due to her under the Constitution. To the extent that she received any explanation for the Government's decision, this was more than the Due Process Clause required.")[4]; *Baaghil v. Miller*, 1 F.4th 427, 433 (6th Cir. 2021) ("Nothing in the Constitution

---

[4] The Supreme Court's decision in *Kerry v. Din* is a plurality decision authored by Justice Scalia and joined by Justices Alito and Roberts. *See Din*, 576 U.S. at 87–88. As in this case, the respondents in *Din* alleged that the consular decision to deny an immigrant visa violated the Fifth Amendment due process rights of the visa applicant's citizen spouse. *Id.* at 88. The respondents argued that this Fifth Amendment injury triggered the *Mandel* exception to consular

11

creates a right to bring a noncitizen spouse into the United States." (citations and quotations omitted)); *Bakran v. Sec'y, United States Dep't of Homeland Sec.*, 894 F.3d 557, 565 (3d Cir. 2018) ("[N]o court has recognized that a citizen spouse has a constitutional right to have his or her alien spouse reside in the United States." (collecting cases)); *Singh v. Tillerson*, 271 F. Supp. 3d 64, 72 (D.D.C. 2017) ("The Court concludes therefore that the defendants' denial of Plaintiff's family members' visas did not implicate a liberty interest protected by the Fifth Amendment, and the Plaintiff's claim does not fall within the narrow exception to consular nonreviewability."); *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1353 (S.D. Fla. 2006) ("[T]here is no statutory or constitutional right to familial association with a person trying to immigrate to the United States…." (citations omitted)). Because Moralez fails to establish a constitutionally protected interest in having her husband present in the United States, her Fifth and Fourteenth Amendment due process claims cannot stand.

---

nonreviewability. *Id.* Justice Scalia rejected this argument, finding that United States citizens do not have a constitutionally protected interest in having their spouses reside in the United States. *Id.* at 101. Justices Kennedy and Alito concurred in the judgment but declined to reach the constitutional issue. They found that, even if the citizen's constitutional rights were violated, the consular official provided a facially legitimate and bona fide justification for the denial. *Id.* at 104–05 (Kennedy, J. concurring).

"When a court is confronted with a Supreme Court plurality decision, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Bano v. Pompeo*, 377 F. Supp. 3d 464, 469 (E.D. Pa. 2019) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). A concurrence that "is essential to maintaining the majority … can assuredly narrow what the majority opinion holds, by explaining the more limited interpretation adopted by that necessary member[s] of the majority." *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 310–11 (3d Cir. 2013) (citations and quotations omitted). Courts applying *Din* treat Justice Kennedy's concurrence as controlling because it sets forth the narrowest grounds for the holding. *See, e.g.*, *Bano*, 377 F. Supp. 3d at 469 (collecting cases); *accord Cardenas v. United States*, 826 F.3d 1164, 1171 (9th Cir. 2016). The Court will follow suit here. However, Justice Scalia's opinion still provides persuasive authority. *See Creasy v. Charter Commc'ns*, *Inc.*, 489 F. Supp. 3d 499, 505 (E.D. La. 2020), *judgment entered*, No. CV 20-1199, 2020 WL 7646640 (E.D. La. Dec. 23, 2020).

12

Plaintiffs' remaining constitutional claims also fail. While Plaintiffs allege that Moralez has a First Amendment right to "petition her husband," the Complaint does not plead facts stating that the Government prevented Moralez from petitioning on her husband's behalf. *See Twombly*, 550 U.S. at 570. Nor do Plaintiffs allege or cite any law stating that a visa denial—without more—violates First Amendment rights. Although Plaintiffs argue that Moralez has a Ninth Amendment right to be reunited with her family, "[t]he Ninth Amendment is not an independent source of individual rights; rather, it provides a 'rule of construction' that we apply in certain cases." *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007) (citing *United States v. Bifield*, 702 F.2d 342, 349 (2d Cir. 1983)); *see also Kuromiya v. United States*, 37 F. Supp. 2d 717, 725 (E.D. Pa. 1999) ("[T]he Ninth Amendment has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation. Rather, the Ninth Amendment may be applied only as a rule of construction to other constitutional provisions." (citations and quotations omitted)). Plaintiffs' Ninth Amendment argument merely recasts "their other constitutional challenges, which are 'rooted in [the] historical interpretation of the principles embodied by' separate constitutional provisions." *Alharbi v. Miller*, 368 F. Supp. 3d 527, 569–70 (E.D.N.Y. 2019), *aff'd in part, dismissed in part*, 829 F. App'x 570 (2d Cir. 2020) (quoting *Jenkins*, 483 F.3d at 92). Therefore, Plaintiffs' First and Ninth Amendment claims must also be dismissed.

Finally, Plaintiffs do not cite any authority stating that the Government's alleged APA violation amounts to a constitutional injury. Moreover, "the APA does not provide an avenue for judicial review of a consular officer's decision to deny an immigration visa." *Moreira v. Cissna*, 442 F. Supp. 3d 850, 857–58 (E.D. Pa. 2020) (collecting cases); *see also Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018) ("[T]he APA provides no avenue for review of a consular officer's

adjudication of a visa on the merits."); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999) (finding that courts cannot review visa denials under the APA).

In sum, the Complaint does not plead facts showing that the Government violated Moralez's constitutional rights by denying Lopez's visa application. The Complaint therefore fails to show that the limited exception to consular nonreviewability articulated in *Mandel* applies in this case. As a result, Lopez's visa application denial "escapes review" even if the decision was "erroneous." *Onuchukwu*, 408 F. App'x at 560.

## V. Conclusion

The Court is sympathetic to Plaintiffs' unfortunate situation and their attempts to reunite their family. But under the facts of this case, the law is clear that the Court cannot intervene in the Government's decision to deny Lopez's visa application, or even conduct a limited review of that denial absent a constitutional injury. The Court will therefore grant the Government's motion to dismiss. An appropriate order will follow.

November 17, 2021                                         /s/ Joseph H. Rodrigez

                                                                                                       Joseph H. Rodriguez, USDJ